407 So.2d 1305 (1981)
Melvin GOODLOW, Plaintiff & Appellee,
v.
CITY OF ALEXANDRIA, Defendant & Appellant.
No. 8534.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
Gist, Methvin, Hughes & Munsterman, H. B. Gist, III, Alexandria, for defendant-appellant.
*1306 James H. Galloway, Jr., Alexandria, for plaintiff-appellee.
Before CULPEPPER, CUTRER and STOKER, JJ.
CULPEPPER, Judge.
Plaintiff seeks damages for personal injuries and property damage sustained when the automobile he was driving struck an open sewer manhole or its cover in a street maintained by the defendant city. The trial judge held the city strictly liable and awarded to plaintiff the sum of $2,668.04. The city appeals. We reverse.
The substantial issue is whether there was a defect in the manhole or its cover which justified the trial judge in applying strict liability.
On or about April 6, 1979, between the hours of midnight and 1:00 A.M., plaintiff was alone in his automobile, traveling north on Lower Third street near its intersection with Daspit Street in the City of Alexandria. The vehicle struck something in the road, plaintiff lost control, and the car ran off the road and struck a utility pole.
Mr. Goodlow was unable to testify as to what he hit, but it was established that there was an open sewer manhole in the right-hand northbound lane of the street, the cover for which was found lying upside down some three to four feet away from the manhole, in the left-hand northbound lane. These were the only things in the street which Mr. Goodlow's vehicle could have struck that would have caused loss of control of the automobile. There is no evidence showing how, when or why the cover came off of the manhole.
The trial judge applied the doctrine of strict liability under LSA-C.C. Article 2317 and Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980). In Jones, the plaintiff stepped on the cover of a catch-basin, which gave way causing her to fall four or five feet into the basin. The Court of Appeal refused to apply strict liability, citing a line of jurisprudence that actual or constructive notice of the defect to a public body is a prerequisite to tort liability. The Supreme Court reversed, holding that where strict liability is applicable notice of the defect is not necessary, even to governmental agencies. The Supreme Court stated:
"Proof of notice of the defect is indeed required when a plaintiff contends that a public body was negligent, either by virtue of specific conduct of its employees which created the dangerous situation (which is itself construed as notice), or by virtue of its failure to correct a dangerous condition caused by others. But, as we have demonstrated, negligence is only one of the footings on which the codal structure of tort liability rests. Where delictual responsibility is based not on negligence but on legal fault, under article 2317, a public body's knowledge of the existence of the danger is irrelevant. Liability is a consequence of the fact of ownership and custody in itself, not of the breach of a duty."
In the present case, the trial judge recognized the essential issue is whether the plaintiff proved the manhole or its cover were defective. In holding the open manhole was defective, the trial judge first quotes from Marquez v. City Stores Company, 371 So.2d 810 (La.1979), where a three-year-old caught his tennis shoe in an escalator in defendant's store. The court found the escalator defective, stating:
"The fact that this escalator caught this child's shoe is an unusual occurrence in itself which would not have happened had this escalator not been defective ... If this escalator were safe for small children with small feet, then James' shoe could not have been caught in this opening."
The trial judge next cites Stablier v. City of Baton Rouge, 393 So.2d 148 (La.App. 1st Cir. 1981), in which the plaintiff was riding a lawnmower in her yard when the ground beneath collapsed into a hidden chasm underneath caused by a leak in the city's underground storm drain. The Court of Appeal criticizes the reasoning by the Supreme Court in Marquez as equating an unusual occurrence with the presence of a defect. Nevertheless, the Court of Appeal found that even without the analysis in *1307 Marquez, there was a defect in the storm drain which caused plaintiff's injuries.
In his written reasons, the trial judge correctly states it is obvious that an open manhole in a street creates an unreasonable risk of injury. He reasons, under Marquez and Stablier, that since the manhole was open it was a defective thing in the custody of the city, and the city is strictly liable. We do not agree with this analysis.
We note that in all of the cases which have applied strict liability, the court found an inherent defect in the thing which caused the injury. In the landmark case of Loescher v. Parr, 324 So.2d 441 (La.1975), defendant's magnolia tree, which fell on plaintiff's car, was 90% rotted out on the inside, although apparently sound on the outside. In The American Road Insurance Company v. Montgomery, 354 So.2d 656 (La.App. 1st Cir. 1977), plaintiff was injured as a result of a defective traffic light. In Durbin v. City of Baton Rouge, 366 So.2d 1020 (La.App. 1st Cir. 1978), a rotted tree limb fell on plaintiff's car. Joffrion v. Allstate Insurance Company, 374 So.2d 694 (La.App. 1st Cir. 1979) also involved a traffic light which malfunctioned. In Jones v. City of Baton Rouge, supra, the court found the cover of the catch-basin was defective, causing it to give way. In Marquez v. City Stores Company, supra, the escalator was found defective. Stablier v. City of Baton Rouge, supra, involved a defective storm drain.
In the present case, the city argues convincingly that all of the cases which have applied strict liability are distinguished in that here there is no proof that the manhole or its cover were imperfect in any way. The only evidence of imperfection is the testimony of a witness for plaintiff who testified he lived in a house across the street from the manhole, and that the cover vibrated when heavy trucks ran over it. However, the city introduced testimony that there was no crack or other imperfection in either the manhole or its cover. Witnesses for the city testified there had never before been any problem with the cover being off of this manhole. Moreover, the evidence shows that after this accident the cover was replaced, and it fit snuggly over the manhole where it has remained safely since. This manhole cover weighs 125 pounds. It was heavy and difficult to remove. When it was necessary to remove the cover for maintenance of the sewer system, city employees used a sharp pointed pick to pry it off. However, city witnesses testified no work had recently been performed on the manhole or in the vicinity.
Of course, the cover was off of the manhole when plaintiff's vehicle struck it. But there is no evidence to show how or when it came off. We could speculate that it was removed deliberately by vandals or thieves. The police officer who investigated this accident testified that this area was on his "beat", and he had never known of this cover being off, but he had heard of other manholes being found open and the covers missing. He stated he knew that people had removed and stolen manhole covers. The street repair superintendent also testified manhole covers had been removed and stolen in the past. The water department superintendent testified it was possible that a heavy vehicle could strike the manhole cover at precisely the wrong angle and kick it out. But there is no evidence that this had ever occurred.
As stated above, the trial judge held that since the cover was off of the manhole, it was defective, and strict liability applies. We find no case which goes this far. In its brief, the city argues with logic that the fact that a thing in the custody of the defendant creates a hazard does not necessarily mean it was defective. For instance, in Loescher v. Parr, supra, proof that the magnolia tree fell on plaintiff's car would not have been sufficient to prove a defect. The defect proved was that the tree was rotten. If the tree had been perfectly sound and someone or something had cut or knocked it down on Mr. Loescher's car, Mr. Parr would not have been strictly liable.
In Loescher, supra, the court defines a defective thing as one which creates an unreasonable risk of harm to others. The *1308 rationale of holding the owner-custodian of a defective thing strictly liable is explained as follows:
"The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.
This jurisprudence recognizes that the injured person must prove the vice (i.e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force."
In determining the reasonableness or unreasonableness of the risk, our Supreme Court has held we should consider the probability and magnitude of the risk balanced against the utility of the thing alleged to be defective. In Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980), a 12-year-old boy sustained injuries when his shoe caught in the space between the moving tread of an escalator and the side wall. The issue was whether the escalator was defective. Ultimately, the court held the design of the escalator was defective. However, in discussing the issue, the court stated:
"Although "unreasonableness" is a traditional standard for the determination of negligence, it is also fundamental to a finding of strict liability under LSA-C.C. art. 2317. In both negligence and strict liability cases, the probability and magnitude of the risk are to be balanced against the utility of the thing. The distinction between the two theories of recovery lies in the fact that the inability of a defendant to know or prevent the risk is not a defense in a strict liability case but precludes a finding of negligence."
In Hunt, the court compared strict liability to products liability, stating:
"Again, a balancing test is mandated: If the likelihood and gravity of harm outweigh the benefits and utility of the manufactured product, the product is unreasonably dangerous. If the product is unreasonably dangerous to normal use, the manufacturer is ultimately responsible to one injured in the course of that use."
In the very recent case of Broussard v. Pennsylvania Millers Mutual Insurance Company, 406 So.2d 574 (La.1981), a five gallon aquarium and its stand fell on plaintiff's child as he was either climbing on it or pulling it. The court held strict liability did not apply because there was no proof of defects in design or other vices in the aquarium or its stand, no proof of previous falls, and, thus, no showing of an unreasonable risk of injury. The court expressly stated that the fact of an accident does not establish a presumption of defect. The Jones, Hunt and Marquez cases are distinguished. This case, decided by our Supreme Court on November 16, 1981, supports our conclusion.
Applying these principles to the facts of the present case, we conclude the trial judge was clearly wrong in holding the manhole or its cover were defective. The sewer system of the city is an absolute necessity, as are the manholes which provide access to the sewers for purposes of maintenance. Since there was no crack, design error, or other imperfection in the manhole or its cover, the only risk suggested is that vandals or thieves might possibly remove the cover, or that a heavy vehicle might possibly strike the cover in precisely the wrong way and kick it off. The question *1309 is whether the risk of harm created by these remote possibilities is unreasonable, when balanced against the utility of the manhole and its cover. Under all of the circumstances of this case, we conclude the risk was not unreasonable.
Since the plaintiff failed in his burden of proof that the manhole or its cover were defective, we find the trial court erred in applying the doctrine of strict liability.
The evidence does not show, and plaintiff does not even argue on appeal, that the city is liable because of its negligence under LSA-C.C. Article 2315.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of the defendant and against the plaintiff, dismissing plaintiff's suit at his cost.
REVERSED AND RENDERED.